JEFFREY L. GREYBER
Email: jgreyber@greyberlaw.com
GREYBER LAW, PLLC
9170 Glades Rd., #161
Boca Raton, FL 33434
Telephone: (561) 702-7673
Facsimile: (833) 809-0137

*Lead Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEBSEED, INC., et al., | Case No. 4:25-cv-03020-DMR |
| *Plaintiffs*, | **PLAINTIFFS' *EMERGENCY* MOTION TO STAY THESE PROCEEDINGS 90-DAYS** |
| v. | |
| DEPARTMENT OF STATE, et al., | **BEFORE: HON. DONNA M. RYU** |
| *Defendants*. | **LOCATION: OAKLAND, CT. 4, FL. 3** |

Plaintiffs, Webseed, Inc. ("Webseed") and Brighteon Media, Inc. ("Brighteon"), respectfully move this Court for entry of an emergency order staying these proceedings for a period of 90-days to permit Plaintiffs to file their forthcoming petition for writ of mandamus to the Fifth Circuit Court of Appeals.[1] Undersigned counsel is authorized to represent that Defendants consent to a 90-day stay for the convenience of the parties and in light of other case commitments, but do not agree that the Fifth Circuit has jurisdiction over this case now that it has been transferred and docketed in this Court. Given the parties' agreement and the mutual interest in conserving judicial and party resources, Plaintiffs respectfully submit that the unopposed requested relief should be granted as a matter of course.

Out of an abundance of caution, however, Plaintiffs provide the following abbreviated briefing in support of the stay, despite there being no dispute as to the relief requested. Although Defendants consent to a 90-day stay, Defendants do not agree to any legal argument or summary of facts contained in Plaintiffs' abbreviated briefing.

## I. Introduction

Plaintiffs bring this emergency motion to preserve the status quo and prevent irreparable harm from the immediate transfer of this action to a forum that lacks jurisdictional and constitutional propriety. The Western District of Texas Court's April 2, 2025, transfer Order (*see Webseed, Inc., et al. v. DOS, et al.*, No. 1:24-cv-00576-RP (W.D. Tex.), [D.E. 59]), among other things, issued without meaningful *de novo* review, summarily adopted a flawed Magistrate Judge's recommendation that completely mischaracterized Plaintiffs' constitutional and antitrust claims as mere contractual claims, in violation of controlling Fifth Circuit precedent and fundamental due process. A stay is warranted to allow the Fifth Circuit time to determine whether the Western District of Texas Court's transfer order represents a clear abuse of discretion – here, the same day that [D.E. 59] issued (mere hours after issuance, actually), this matter was sent to this Court.

## II. Legal Standard

Federal courts have inherent authority to stay proceedings and orders in the interests of justice and judicial economy. A stay pending mandamus is appropriate where: (1) there is a substantial

---

[1] In light of this Motion, the parties also request that the April 17, 2025, deadline for the parties to file a Consent or Decline to Magistrate Judge Jurisdiction also be stayed for 90-days.

likelihood of success on the merits; (2) the moving party will suffer irreparable harm absent a stay; (3) the stay will not substantially injure the other parties; and (4) the stay is in the public interest. *See, e.g., Nken v. Holder*, 556 U.S. 418, 426 (2009).

**III.     Argument**

    *A.     The Transfer Order Failed to Engage in Meaningful De Novo Review*

Although Plaintiffs timely objected to the Magistrate Judge's Report and Recommendation [D.E. 56] ("R&R") and presented extensive, well-supported legal arguments and factual rebuttals in their objections, *see* [D.E. 58], the District Court Judge merely adopted the R&R without substantive analysis, rubberstamping the Magistrate Judge's erroneous conclusions. *See* [D.E. 59]. Put differently, the District Court Judge's transfer order [D.E. 59] did not address any of the specific Plaintiffs objections [D.E. 58] or provide any independent reasoning or justification for transfer other than the Magistrate Judge's recommendation. This rubberstamp approach fails to, among other things, satisfy the requirements of 28 U.S.C. §636(b)(1)(C), which demands *de novo* District Court Judge review of a R&R that has been timely objected to (as here).

    *B.     The Transfer Order Contravenes Fifth Circuit Precedent A.B. v. Salesforce*

The Magistrate Judge's recommendation fundamentally misrepresented the nature of Plaintiffs' claims by conflating a government-orchestrated censorship scheme with a routine contract dispute over platform Terms of Service ("TOS") and associated forum selection clauses. This is a serious and obvious legal error – one that arises far too often in courts that fail to distinguish between contractual obligations and constitutional rights.

The Fifth Circuit (which governs the Western District of Texas Court) recently addressed this same issue in *A.B. v. Salesforce, Inc.*, 123 F.4th 788 (5th Cir. 2024). There, the Court held that a plaintiff does not treat the defendant as the publisher or speaker of third-party content merely because publication is part of the causal chain. The same logic applies here – the mere fact that a platform was part of the causal sequence does not mean Plaintiffs' claims arise out of, or are governed by, the platform's TOS.

This binding precedent is irreconcilable with the Western District of Texas Court's transfer order and was entirely ignored by the District Court. The core of Plaintiffs' Amended Complaint is not

a contract claim, it is a constitutional and statutory challenge alleging that government officials conspired with Big Tech and affiliated NGOs, both foreign and domestic, to suppress Plaintiffs' protected speech. The alleged conduct occurred entirely outside the scope of any platform agreement and is wholly independent of any TOS.

By relying on the Platform Defendants' forum selection clauses to transfer the entire case (including claims against parties not subject to any such contract) the Western District of Texas Court improperly recharacterized extra-contractual claims rooted in constitutional and state law as contract-based disputes. This directly contravened the Fifth Circuit's holding in *Salesforce*, and completely negated Texas' laws (*e.g.*, HB 20) that are not found in California.

### C. *Plaintiffs Face Irreparable Harm if the Case is Transferred*

Transfer to this Court places Plaintiffs in unnecessary jeopardy due to the Ninth Circuit's well-documented pattern of misapplying 47 U.S.C. §230(c)(1) of the Communications Decency Act ("CDA"). Typically and erroneously, Ninth Circuit courts misinterpret/misapply §230(c)(1) as conferring blanket, pre-discovery immunity to platforms, even in cases involving affirmative, first-party misconduct (*see, e.g., Fyk v. Facebook*). This approach has repeatedly resulted in the premature dismissal of meritorious claims, often without any consideration of the underlying facts. The danger is especially acute here, where Plaintiffs' claims arise from a government-directed censorship scheme that has nothing to do with the platform's TOS or role as "the publisher or speaker" of third-party content.

By transferring this case to a jurisdiction that has consistently applied §230(c)(1) beyond its statutory bounds, the Western District of Texas Court stripped Plaintiffs of a fair opportunity to be heard, precisely the kind of injustice the Fifth Circuit warned against in *A.B. v. Salesforce*. This transfer would deny Plaintiffs access to a consistent, neutral forum and subject them to procedural disadvantages that cannot be remedied *ex post facto*; indeed, we submit, the transfer itself heavily militates toward a preordained adverse outcome for Plaintiffs. The resulting deprivation of constitutional redress and destruction of forum rights constitutes irreparable harm.

### D. *The Public Interest and Balance of Harms Favor a Stay*

Granting a relatively short stay to allow appellate court review (the Fifth Circuit's mandamus-oriented review of what its District Court has done here) will not prejudice Defendants, particularly where most have not even taken a position on the FSCs, and *particularly here where no Defendants contest / disagree with the requested 90-day stay of these proceedings*. In contrast, denying a stay threatens to nullify Texas's public policy interest in adjudicating censorship and competition-related harms that occurred within its borders. Maintaining this matter in Texas serves the integrity of judicial review, reinforces the Fifth Circuit's authority, and ensures constitutional grievances are not funneled to a forum with an established record of procedural evasion and ideological favoritism.

### E. *A Stay Is Warranted Under the Governing Standard*

Again, a stay pending mandamus is appropriate where: (1) there is a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable harm absent a stay; (3) the stay will not substantially injure the other parties; and (4) the stay is in the public interest. *See, e.g., Nken v. Holder*, 556 U.S. 418, 426 (2009).

First, there is a substantial likelihood of success on the merits of Plaintiffs' forthcoming mandamus petition. The transfer order ignored binding Fifth Circuit precedent (*e.g.*, *A.B. v. Salesforce*) and failed to conduct the required *de novo* review of Plaintiffs' timely objections pursuant to 28 U.S.C. §636(b)(1)(C). The Western District of Texas Court erroneously treated constitutional and statutory claims as mere contractual disputes, despite Plaintiffs' claims arising wholly independently of any Terms of Service. This is precisely the kind of fundamental legal error mandamus is meant to remedy.

Second, Plaintiffs will suffer irreparable harm absent a stay. Transferring the case to the Ninth Circuit (a jurisdiction known for prematurely dismissing claims under an overbroad and judicially-expanded interpretation of §230(c)(1)) would deny Plaintiffs meaningful access to judicial review. Once transferred, this procedural harm cannot be undone, and Plaintiffs would be forced to litigate in a forum that has repeatedly insulated platforms from accountability, even for government-coordinated censorship.

Third, the stay will not substantially injure the other parties. No Defendant opposes the 90-day stay request. Most Defendants have not even taken a position on the forum selection issue. The mutual

agreement to conserve resources and avoid premature proceedings in a potentially improper forum weighs heavily in favor of granting the stay.

Fourth, and finally, the public interest favors a stay. Allowing the Fifth Circuit to review whether one of its own district courts disregarded binding Circuit precedent and statutory review obligations promotes uniformity in the law and preserves public confidence in the integrity of the judicial system. It also protects state-based interests like Texas's intent to adjudicate censorship and antitrust claims impacting its residents.

WHEREFORE, for all the foregoing reasons (whether considered separately or together), Plaintiffs respectfully request that this Court enter an emergency order staying proceedings in this Court for 90-days to permit Plaintiffs opportunity to pursue writ of mandamus with the Fifth Circuit Court, and/or granting Plaintiffs any other relief this Court deems equitable, just, and/or proper. ***Once more, undersigned counsel, an officer of many courts across this country (and in good standing in all), represents that Defendants consent to a 90-day stay for the convenience of the parties and in light of other case commitments, but do not agree that the Fifth Circuit has jurisdiction over this case now that it has now been transferred and docketed in this Court.***

Dated: April 16, 2025.

Respectfully Submitted,

/s/ Jeffrey Greyber
**Jeffrey L. Greyber, Esq.**
Greyber Law, PLLC
*Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 16, 2025, I electronically filed the foregoing documents with the Clerk of the Court by using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record *via* Notices of Electronic Filing generated by CM/ECF, and also emailed to counsel given the recency of transfer.

/s/ Jeffrey Greyber
**Jeffrey Greyber, Esq.**